**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RAVI KADIYALA, | |
| Plaintiff, | Case No. 25 cv 9363 |
| v. | Honorable Sunil R. Harjani |
| SHELLPOINT MORTGAGE SERVICING, DIRECTOR'S MORTGAGE GROUP, and POPULAR BANK, | |
| Defendants. | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Ravi Kadiyala seeks to unencumber the title to his home by suing Defendants Shellpoint Mortgage Servicing, Director's Financial Group, and Popular Bank to void their claims to a mortgage and promissory note, cancel a home equity line of credit, and quiet title. Defendant Shellpoint, with the consent of Popular Bank, removed this case to federal court. Plaintiff seeks to remand this case back to state court, or in the alternative, asks this Court to abstain from exercising jurisdiction because of ongoing state court foreclosure actions. [13]. Shellpoint argues that the Court should retain jurisdiction and dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Plaintiff's motion to remand [13] is denied, and Shellpoint's motion to dismiss [9] is granted.

**Background**

*Pro se* Plaintiff Ravi Kadiyala owns and resides at 2000 Mustang Drive, Naperville, IL 60565 (Mustang Property). [1-1] ¶ 2. This property is subject to a mortgage and a Home Equity Line of Credit (HELOC) currently owned by Defendants Shellpoint and Popular Bank,

respectively. *Id.* ¶¶ 2–7. The details of these instruments are not relevant to the issues before the Court beyond a few allegations about their origination.

On October 25, 2013, Plaintiff executed a promissory note and mortgage in favor of Defendant Director's Financial Group (DFG). *Id.* ¶¶ 5, 10. Plaintiff alleges that in October 2013, DFG was: (1) "Not registered to conduct business in Illinois with the Illinois Secretary of State;" (2) "not licensed to issue/lend mortgages under the Residential Mortgage License Act of 1987 (205 ILCS 635); and" (3) "not licensed to originate mortgage loans under the Residential Mortgage License Act of 1987 (205 ILCS 645)." *Id.* ¶ 6. This mortgage was later assigned to Defendant Shellpoint Mortgage Servicing (Shellpoint), which currently services and owns the mortgage. *Id.* ¶¶ 3, 4. The second instrument is a HELOC held by Defendant Popular Bank. *Id.* ¶ 7.

Plaintiff brought this action in the Circuit Court of DuPage County on June 17, 2025. [1-1]. On August 7, 2025, Shellpoint, with the written consent of Popular Bank, removed this case to federal court. [1]; [1-3]. In the removal notice, Shellpoint claimed that the removal was timely under 28 U.S.C. § 1446(b) and that venue is proper in this District under 28 U.S.C. § 1441(a). [1] ¶¶ 4, 5. Shellpoint further asserted that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of Illinois, Shellpoint is a citizen of Delaware and New York, Popular Bank is a citizen of New York, and DFG is a defunct entity with a last-known principal place of business in California. *Id.* ¶¶ 8–11. According to Shellpoint, the amount in controversy for diversity jurisdiction is met as Plaintiff seeks an order discharging a mortgage for $380,000, and quieting title to real estate estimated to be worth approximately $853,200. *Id.* ¶ 12.

### Legal Standard

Plaintiff moves to remand this case back to DuPage County Court under Section 1447(c), which provides, in relevant part, a "motion to remand the case on the basis of any defect other than

lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). The failure to timely bring the motion to remand results in a waiver of any such defects. *Pettitt v. Boeing Co.*, 606 F.3d 340, 343 (7th Cir. 2010). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

Shellpoint moves to dismiss this case under Rule 12(b)(6). "A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Heredia v. Capital Management Services, L.P.*, 942 F.3d 811, 814 (7th Cir. 2019). However, a complaint must

consist of more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## Discussion

Plaintiff brings four claims against Defendants: Count I - Declaratory Judgment (Void Mortgage and Note – Lack of Licensure by DFG), Count II - Quiet Title, Count III - Cancellation of Instruments, and Count IV - Lack of Standing to Enforce Mortgage. [1-1]. Plaintiff has moved to remand. Shellpoint has moved to dismiss Counts I, II, and IV for failing to state a claim under Rule 12(b)(6).[1]

### I.     Motion to Remand

A defendant has the right to remove an action brought in state court to federal court when the federal court has original subject matter jurisdiction. 28 U.S.C. § 1441(a). Federal diversity jurisdiction exists when the action involves citizens of different states, and the amount in controversy exceeds $75,000.00 per plaintiff, exclusive of interest and costs. 28 U.S.C. § 1332(a). In the removal petition, Shellpoint asserts, and Plaintiff does not contest, that diversity jurisdiction exists. Instead, Plaintiff filed a motion to remand. [13]. But, although titled as a motion to remand, Plaintiff's opening brief exclusively argues that this Court should abstain from deciding this case because of parallel state court cases. Later, Plaintiff argues for the first time in his reply brief that the removal was procedurally deficient because there was not "continuing unanimity among defendants until" the removal issue was resolved. [17] at 3–4.

Plaintiff waived this argument twice over. First, Plaintiff waived the argument by not bringing it in his initial brief. *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("Arguments raised for the first time in [a] reply brief are waived because they leave no chance to respond.").

---

[1] Popular Bank did not join Shellpoint's motion or bring its own motion. As Count III is only against Popular Bank and was not discussed in the motion to dismiss, the Court does not address it here.

The argument is also waived because by the time Plaintiff raised it, the 30-day window for raising procedural defects expired. "Once a defendant has filed a notice of removal in the federal district court, a plaintiff objecting to removal 'on the basis of any defect in removal procedure' may, within 30 days, file a motion asking the district court to remand the case to state court." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 69 (1996) (quoting § 1447(c)). Even if this argument could have been raised as a defect to removal, by raising it outside of the 30-day window, Plaintiff waived the argument. *See Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) ("This defect in the removal process could have justified a remand, but because 30 days passed without protest—and the problem does not imperil subject-matter jurisdiction—the case is in federal court to stay."); *Pettitt v. Boeing Co.*, 606 F.3d 340, 343 (7th Cir. 2010) (procedural "defects are waived if a party does not bring a timely motion to remand the case to state court."). Therefore, Plaintiff's argument about the procedural defect is waived.

However, even if the Court liberally construed Plaintiff's *pro se* opening brief, his continuing unanimity argument does not withstand scrutiny.[2] For removal in a multi-defendant case, all served defendants must jointly consent in writing within the 30-day time limit. *Roe v. O'Donohue*, 38 F.3d 298, 301 (7th Cir. 1994), *overruled in part on other grounds by Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999). Here, Shellpoint filed Popular Bank's

---

[2] The case plaintiff cites to support this proposition—*Chicago Title & Land Tr. Co. v. JS II, LLC*, No. 11-cv-50249, 2012 WL 2343416 (N.D. Ill. June 20, 2012)—does not exist. It's quite clear from the format of the motion that Plaintiff is using an AI tool. Plaintiff should proceed with caution in any future filings as all litigants, whether represented by counsel or not, "must read their filings and take reasonable care to avoid misrepresentations, factual and legal." *Jones v. Kankakee Cnty. Sheriff's Dep't*, ___ F.4th ___, 2026 WL 157661, at *3 (7th Cir. Jan. 21, 2026); Fed. R. Civ. P. 11(b)(2), (3). A failure to do so may result in Rule 11 sanctions.

written consent with its notice of removal, which is sufficient under the statute.[3] [1-3]. Thus, Plaintiff's motion for remand is denied.

## II.    Abstention

Next, in the motion to remand, Plaintiff argues that this Court should abstain from deciding this case under the *Colorado River* doctrine. Abstention is appropriate under *Colorado River* "when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote 'wise judicial administration.'" *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976)). The Supreme Court has cautioned courts that in addressing abstention, "the task of the district court 'is not to find some substantial reason for the exercise of federal jurisdiction' but instead 'to ascertain whether there exist exceptional circumstances, the clearest of justifications, to justify the surrender of that jurisdiction.'" *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25–26 (1993) (cleaned up)). This requires courts first to consider whether the state and federal litigation are parallel. *Freed*, 756 F.3d at 1018. "If the actions are not parallel, the *Colorado River* doctrine does not apply, and the court need not address the second part of the analysis." *Id.* If the cases are parallel, then the Court must determine "whether 'exceptional circumstances' justify abstention." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498 (7th Cir. 2011).

### A.  Parallel Cases

"To determine whether a stay is appropriate, a district court must first evaluate whether the federal and state cases are parallel." *Huon*, 657 F.3d at 646. "In other words, the court must

---

[3] The parties do not dispute that DFG's consent was not required as it was not served in the state court case. [1] ¶ 15; [13] at 2; 28 U.S.C. § 1446(b)(2).

ascertain whether 'substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *Id.* (quoting *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004). "[F]or *Colorado River* purposes ... [p]recisely formal symmetry" between the state and federal suits is "unnecessary" to find parallelism. *Adkins*, 644 F.3d at 498–99. The critical question is whether there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Id.* at 499 (quoting *Clark*, 376 F.3d at 686). If the proceedings are not parallel, then the *Colorado River* doctrine does not apply, and a stay is not proper. *AAR Int'l*, 250 F.3d at 518. If there is any doubt that cases are parallel, a district court should not abstain. *Id.* at 520.

Plaintiff initially argued that two Illinois foreclosure actions were parallel to this litigation, one brought by Popular Bank and one involving Shellpoint. The case Plaintiff primarily relied on to support his argument was Popular Bank's foreclosure action against Plaintiff and his wife for their Mustang Property (Popular Foreclosure Action)—the same property at issue in this litigation. However, this action was voluntarily dismissed in November 2025. [25]. The second state court action is Shellpoint's foreclosure action against the Kadiyalas on a property located at 50 East Bellevue Place #1704, Chicago, Cook County, Illinois (Cook County Case No. 2024CH08963) (Bellevue Foreclosure Action). However, that foreclosure involves a different property, located in a different county, from the Mustang Property at issue here. In the Bellevue Foreclosure Action, the Kadiyalas filed a counterclaim seeking to link the Bellevue and Mustang transactions because both "transactions were originated by the unlicensed DFG entity, were no-cash-out refinance transactions, and were closed within weeks of each other in October 2013. They were also closed by the same closing/title agent and notary." [13] at 9. Plaintiff's original argument focused on why the Popular Foreclosure Action and Bellevue Foreclosure Action should be joined in state court with this case, because all three actions "arise from the same 2013 DFG refinance pipeline

involving forged applications, unlicensed origination, and invalid assignments." [17] at 7. However, with the dismissal of the Popular Foreclosure Action, the only remaining state court action is the Bellevue Foreclosure Action.

The Bellevue Foreclosure Action is not parallel to this litigation as it involves a different property, located in a different county, and a different loan. While Plaintiff argues that the cases involve the same lender/servicer and the same DFG-originated loan portfolio, the relevant question is whether there is a substantial likelihood that the outcome of the Bellevue Foreclosure Action will dispose of the claims presented here. The answer is clearly no, as the properties involved are different. Whether or not Shellpoint forecloses on the Kadiyalas' property in Cook County will not resolve whether Plaintiff can obtain a declaratory judgment and quiet title to his property in DuPage County. Thus, relying on the lack of parallel cases alone, the Court should not abstain from this case and need not consider whether an exceptional circumstance exists.

### B. *Colorado River* Factors

Even if the cases were parallel, the ten *Colorado River* factors also weigh against abstention. When the state and federal suits are parallel, the Court may stay the exercise of its jurisdiction under "exceptional circumstances." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25–26 (1983). As such, "a federal court's ability to abstain from exercising federal jurisdiction 'is the exception, not the rule[.]'" *Adkins*, 644 F.3d at 496 (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705). "These factors are not meant to be a 'mechanical checklist,' but require careful balancing by the federal district court." *Id.* at 501. "'The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case,' but in any case, the evaluation must be made 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Id.* (quoting *Moses*, 460 U.S. at 16). The factors are:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*Huon*, 657 F.3d at 647–48 (quoting *Adkins*, 644 F.3d at 500–01).

 Considering these factors overall, they weigh against abstention. The Bellevue Foreclosure Action involves an unrelated property and a different loan instrument than those at issue in this case. No state court has assumed jurisdiction over the property or the claims related to the Mustang Property at issue here, nor is there a concern about piecemeal litigation, as the properties are unrelated. There is also no inconvenience to either party to litigate this matter in a federal forum. While some of the broad factors favor abstention, such as the claims being based on Illinois law, this Court routinely handles Illinois state law claims. After considering the factors, plus the presumption against abstention, the Court finds they weigh in favor of exercising jurisdiction.

### C. *Quackenbush*

Lastly, Plaintiff argues that because he is seeking a quiet title, which is an equitable remedy, the Court may remand or dismiss the action under *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716–31 (1996). [13] at 7. Defendant argues that although *Quackenbush* allows for courts to remand an action seeking equitable relief, it does not mandate their remand, and that Plaintiff still needed to meet the *Colorado River* abstention requirements. [16] at 2–3. Plaintiff does not respond to this argument in his reply brief.

As an initial point, Plaintiff waived the argument by not responding to Shellpoint's arguments. *See Webb v. Frawley*, 906 F.3d 569, 581 (7th Cir. 2018) ("Webb has waived any counterarguments he may have had by not responding to Frawley's argument on this topic in his

reply brief."); *In re GT Automation Grp., Inc.*, 828 F.3d 602, 605 (7th Cir. 2016) ("An argument not responded to is ordinarily deemed waived."). Further, even in Plaintiff's opening brief, it is unclear what his argument is for how *Quackenbush* applies, which is another basis for waiver. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver."); *Lewis v. Mills*, 677 F.3d 324, 332 (7th Cir. 2012) ("Unsupported and underdeveloped arguments are waived.") (cleaned up). Moreover, *Quackenbush* does not provide an independent path for dismissal or remand; it merely allows for federal courts to dismiss or remand a case based on abstention principles where equitable relief is sought. *Quackenbush*, 517 U.S. at 721. But Plaintiff has not established that abstention is appropriate here, so *Quackenbush* does not provide a basis to remand.

### III.    Motion to Dismiss

Turning to Defendant Shellpoint's motion to dismiss for failure to state a claim, Shellpoint seeks to dismiss Count I (Declaratory Judgment (Void Mortgage and Note)), Count II (Quiet Title), and Count IV (Lack of Standing to Enforce Mortgage). As to Count I, Shellpoint contends that the Illinois legislature amended the Residential Mortgage License Act to prohibit this claim that a mortgage is void because of improper licensing. Shellpoint asserts that Count II fails to state a claim because it has a valid mortgage, so Plaintiff cannot obtain a quiet title. Lastly, on Count IV, Shellpoint argues that the lack of standing to enforce a mortgage is an affirmative defense, which cannot be raised by a plaintiff as an independent claim.

### A.  Count I: Declaratory Judgment (Void Mortgage and Note)

In Count I, Plaintiff alleges that all mortgage lenders are required "to be licensed to originate and lend residential mortgage loans in Illinois" under the Residential Mortgage License

10

Act of 1987 (205 ILCS 635/1-3(a)) (RMLA). [1-1] ¶ 17. According to Plaintiff, DFG was not licensed or registered at the time of origination and lending, so the promissory note and mortgage are void and unenforceable. *Id.* ¶¶ 18, 19.

Defendant argues that in July 2015, the Illinois legislature amended RMLA to abrogate the line of Illinois cases that held that a mortgage made by an entity that lacks authorization under the RMLA was void as against public policy. [10] at 3. The Illinois legislature amended RMLA in 2015 to state: "A mortgage loan brokered, funded, originated, serviced, or purchased by a party who is not licensed under this Section shall not be held to be invalid solely on the basis of a violation under this Section." 205 ILCS 635/1–3(e). "The legislative intent of the plain language of this amendment seems to be to abrogate [an Illinois state appellate court's] holding that a mortgage made by an unlicensed lender is void as against public policy." *Nationstar Mortg. LLC v. Missirlian*, 2017 IL App (1st) 152730, ¶ 15. "The amendment explicitly states that it is intended to clarify, not change, existing law, and is consistent with the License Act's preexisting provisions, which do not provide for any private remedies for violations of its licensing requirements, such as a private right of action or the right of a mortgagor to avoid a mortgage obtained by an unlicensed lender." *Id*. ¶ 15. "Thus, as the amendment makes clear, there is not (and has never been) a right to void a mortgage that violates the Licensing Act." *Wells Fargo Bank, N.A. v. Maka*, 2017 IL App (1st) 153010, ¶ 20. Thus, as amended, RMLA does not allow for a mortgage loan to be invalidated solely based on an RMLA licensing violation. *Id.*

Plaintiff does not dispute that this is the governing law. Instead, Plaintiff attempts to allege a whole new set of facts as the basis for his requested declaratory judgment in his response brief. [30] at 4–7. But a plaintiff cannot amend his complaint in a response brief. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) ("[I]t is a basic principle that the

complaint may not be amended by the briefs in opposition to a motion to dismiss[.]") (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)). While a plaintiff may elaborate on the claims raised in the complaint, "those materials or elaborations" must be "consistent with the pleadings." *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) (quoting *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

As alleged, the only basis on which Plaintiff claims the mortgage is void is because "DFG was not licensed or registered at the time of origination and lending, rendering the promissory note and mortgage void and unenforceable as a matter of law and public policy." [1-1] ¶ 18. But under RMLA, a mortgage cannot be deemed void because it was originated by a party that lacked proper licensing. 205 ILCS 635/1–3(e). Therefore, Plaintiff failed to state a claim in Count I, and it is dismissed. To the extent Plaintiff seeks to make additional allegations about the assignments, they must be in an amended complaint.

### B. Count II: Quiet Title

Next, in Count II, Plaintiff seeks an order to obtain quiet title on the Mustang Property "and remove all clouds based on the void promissory note, mortgage, and HELOC." [1-1] ¶ 24. Plaintiff alleges that "Defendants assert claims or encumbrances on the title to the property that are without a lawful basis." *Id.* ¶ 23. Shellpoint argues that since the mortgage is valid, it cannot constitute a cloud on the title, so Count II must be dismissed. [10] at 4. Plaintiff responds that his quiet title count should survive because he alleged that the assignments are "plausibly void ab initio because they are disconnected from the 2013 note sale/servicing transfer and were executed years later by or through entities without authority (including DFG's lack of corporate capacity)." [30] at 9–10.

However, as with Count I, Plaintiff does not make those allegations in his Complaint and instead raises them for the first time in his response brief to the motion to dismiss. Plaintiff cannot

use his response brief to amend his complaint to add new theories and expanded allegations. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) ("The effort founders, however, because of the axiomatic rule that a plaintiff may not amend his complaint in his response brief."). Therefore, the motion to dismiss Count II is granted.

### C. Count IV: Lack of Standing to Enforce Mortgage

Lastly, in Count IV, Plaintiff alleges that "Shellpoint has not produced evidence of a complete chain of assignments, proof of consideration, endorsement, or allonge of the original wet-ink promissory note." [1-1] ¶ 29. Thus, "[n]either of the Defendants has standing to enforce the promissory note or mortgage under Illinois law." *Id.* ¶ 30. Shellpoint argues that under Illinois law, a lack of standing to enforce a mortgage is an affirmative defense that must be pled and proven by the defendant, and not an independent cause of action. [10] at 4. And that even if Plaintiff could raise this claim, he lacks standing to challenge those transfers as he was not a party to them. *Id.*

Plaintiff responds that he is challenging the recorded instruments as void for lack of authority. He claims he is seeking equitable relief and not enforcing a contract. [30] at 10. Further, Plaintiff asks the Court for leave to amend his complaint so this count can be "restyled or folded into Count I/II" or for this count to be construed as a declaratory judgment. [30] at 11. In its reply brief, Shellpoint argues that Plaintiff cannot affirmatively raise this as a claim in this action, as it is an affirmative defense to a foreclosure action, and that Plaintiff is improperly seeking an advisory opinion. [34] at 6.

Under Illinois law, in a foreclosure action, after "a plaintiff has filed a complaint, a defendant may raise the plaintiff's lack of standing as an affirmative defense." *Rosestone Invs., LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 24; *see also Deutsche Bank Nat. Tr. Co. v. Iordanov*, 2016 IL App (1st) 152656, ¶ 34. This is not what occurred here. Instead, Plaintiff attempts to

affirmatively bring an independent claim that Shellpoint lacks standing to enforce the mortgage. Plaintiff proffered no argument or legal precedent that allows for this defense to be raised as an independent claim, and this Court found none. As such, Count IV is dismissed for failure to state a claim on which relief can be granted.

### Conclusion

For the reasons stated above, Plaintiff's motion to remand [13] is denied, and Defendant's motion to dismiss [9] is granted. Plaintiff may refile an amended complaint if he can cure the deficiencies and such an amendment is consistent with his obligations under Federal Rule of Civil Procedure 11. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."). If Plaintiff does not file an amended complaint by February 27, 2026, then the dismissal will automatically convert to a dismissal with prejudice.

**SO ORDERED.**

Dated: February 6, 2026

_____

Sunil R. Harjani
United States District Judge